UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:03CR81 (CFD) |
| | : | |
| v. | : | |
| | : | |
| ALEJANDRO BATISTA | : | |
| | : | December 6, 2005 |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

Sentencing has recently been scheduled in this matter for December 12, 2005 at 2:00 p.m. The defendant pled guilty to drug charges subjecting the defendant to a five year mandatory minimum sentence and a significantly higher Guidelines sentence. Under the terms of the plea agreement, the defendant stipulated to certain issues (e.g., drug quantity), but left other issues open for potential resolution prior to sentencing, including the defendant's role in the offense and whether an enhancement was appropriate for gun possession. The original PSR accurately set forth the factual background, but did not include in the Offense Level Computation section all applicable enhancements. The Third Addendum to the PSR, relying on facts in the PSR, corrected the proposed Guidelines calculation resulting in a total offense level of 33, comprising a base offense level of 32 (based on stipulated drug quantity), a two level enhancement for role in the offense, another two level enhancement for possession of firearms, and a reduction of three levels for acceptance of responsibility. The government respectfully submits that this corrected calculation appropriately reflects the underlying facts, and results in a Guidelines sentencing range of 168-210 months incarceration.

It is the government's understanding from discussions with defense counsel that the defendant no longer contests the applicable sentencing range, but will be asking the Court to

impose a Guidelines sentence below the range because of mitigating factors, including alleged childhood abuse and the defendant's mental health. The government submits that a Guidelines sentence is entirely appropriate given the defendant's recidivism, history of violence and association with firearms.[1]

    1. <u>No Basis for Departure Based on Childhood Abuse</u>

While the defendant may well have suffered a dysfunctional upbringing, this Circuit has noted that a defendant's mental and emotional condition, including any condition resulting from alleged childhood trauma, is "ordinarily irrelevant" to a Court's consideration at sentencing. <u>United States v. Rivera</u>, 192 F.3d 81, 85 (2d Cir. 1999); <u>see also</u> U.S.S.G. § 5H1.3 (mental and emotional conditions not ordinarily relevant); 5H1.12 (disadvantaged upbringing not relevant). In <u>Rivera</u>, however, the Court did note that the "district court may property grant a downward departure on the ground that extreme childhood abuse caused mental and emotional conditions that contributed to the defendant's commission of the offense." <u>Id.</u> There, the defendant claimed that extreme childhood abuse caused mental and emotional conditions that contributed to the commission of the offense. Specifically, he had been born of a familial rape and his stepfather (who apparently was a guiding force) died when the defendant was eight. <u>Id.</u> at 86. The defendant spent time in foster homes, suffered severe physical abuse, including multiple beatings, having his hands burned, being made to kneel on rice and being struck with extension cords. <u>Id.</u> Still, the Court of Appeals held that defendant's alleged abuse "falls clearly short" of the requisite showing that the abuse he suffered "rose to the extraordinary level that can be

---

[1] The government submits this brief at this time responding to the defendant's anticipated grounds for departure because the AUSA responsible for this matter will be out of the District until December 12, 2005.

assumed to cause mental and emotional pathology." Id. (citing cases that exemplify extreme abuse, such as a defendant suffering multiple rapes and brutal beatings).

In the present case, while the Government acknowledges that the defendant had significant disadvantages growing up, the alleged physical and psychological abuse suffered by Bastista does not approach the abuse suffered in Rivera which the Court of Appeals found to fall "clearly" short of "extraordinary" childhood abuse. Moreover, in the present case, to the extent that the defendant's behavior is in any way attributable to abuse in childhood, it is unclear why a downward departure would be warranted. The defendant has demonstrated a history of recidivism and violence that create significant doubt that he will modify his behavior in the future to become a contributing member of society.

    2. No Basis for Departure Based on the Defendant's Depression or Psychiatric Condition

It is the government's understanding that the defendant may also seek a departure under 5K2.13 for diminished capacity, relying on the psychiatric report which reflects that he suffers from depression and symptoms of psychosis. This argument is similar to the departure relating to defendant's emotional or mental health discussed above. As suggested above, the Sentencing Commission carefully limited when a reduction in sentence would be justified based on mental state. See U.S.S.G. § 5H1.3 (expressly noting that emotional or mental conditions are ordinarily not relevant in determining whether departures are warranted); United States v. Brady, 2005 WL 1706509 at *8 (2d Cir. 2005)(defendant need establish not only suffering severe emotional trauma, but also a clear causal link between the trauma and the crime charged to justify a departure.).

It is a rare case that might warrant departure based on a mental condition, such as "if the

3

defendant committed the offense while suffering from a significantly reduced mental capacity." U.S.S.G. § 5K2.13 (1998); United States v. Ventrilla, 233 F.3d 166, 169 (2d Cir. 2000) (per curiam) (quoting United States v. Prescott, 920 F.2d 139, 146 (2d Cir.1990)); United States v. Piervinanzi, 23 F.3d 670, 684 (2d Cir. 1994). The application note to this Guideline narrowly defines a "significantly reduced mental capacity" as "a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."

Nothing in the record, including the psychiatric report suggests that the defendant had a reduced *cognitive* capacity that diminished his appreciation of the illegality of his actions, the first prong of the Guidelines definition. In fact, his criminal conduct took place over a lengthy period of time and involved buying cocaine, converting it into cocaine base, and distributing the drugs. The defendant also cannot reasonably complain of any material *volitional* impairment, namely, that he felt *uncontrollably compelled* to commit the crime though he knew it to be wrong, the second prong of the Guidelines definition. While the defendant may have felt he wanted or needed money from his drug dealing, nothing in the report comes close to suggesting some uncontrollable impulse resulted in the repeated instances of criminal conduct.[2]

Absent any cognitive or volitional impairment under the narrow Guidelines definition that contributed to his offense conduct, there is nothing about the defendant's mental condition that warrants either a downward departure or a variance from the advisory guidelines range. To

---

[2] Under 5K2.13, the Guidelines note that the departure does not apply if the defendant's criminal past suggest a need to protect the public. In light of the history outlined in the PSR and the psychiatric report, the Government would submit the departure is inapplicable for this reason as well.

the contrary, the "history and characteristics" of this defendant, 18 U.S.C. § 3553(a)(1), demonstrate that a Guidelines sentence is eminently appropriate.

To the extent that the defendant asserts that continued incarceration will be detrimental to his psychiatric condition, the defendant has spent sufficient time in prison to suggest that he has adjusted to prison. In addition, the defendant is not entitled to a departure based on his medical condition if the Bureau of Prisons can adequately address any condition. "Departure on medical grounds are strict." United States v. Persico, 164 F. 3d 796, 806 (2d Cir. 1999). In Persico the Second Circuit, in citing United States v. Altman, 48 F.3d 96, 104 (2d Cir. 1995), suggested that "'extraordinary physical impairment'" requires medical conditions that the Bureau of Prisons is unable to accommodate. Id. The Bureau of Prisons, with the capacity to address a wide range of medical issues, will no doubt be able to address the issues of depression identified in the defendant's expert's report.

## Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a Guidelines sentence.

> Respectfully submitted,
>
> KEVIN J. O'CONNOR
> UNITED STATES ATTORNEY
>
>
> By:   GEOFFREY M. STONE
>       ASSISTANT UNITED STATES ATTORNEY
>       Federal Bar No. ct25326
>       450 Main Street, Room 328
>       Hartford, CT 06103
>       Tel. 860-947-1101
>
>
> For:  CHRISTOPHER W. SCHMEISSER
>       ASSISTANT U.S. ATTORNEY
>       Federal Bar No. CT14806
>       157 Church Street, 23rd Floor
>       New Haven, CT 06510
>       Tel.: (203) 821-3754
>       Fax: (203) 773-5378
>       christopher.schmeisser@usdoj.gov

## CERTIFICATE OF SERVICE

This is to certify that a copy of the within and foregoing was served by facsimile and U.S. Mail, postage prepaid, this the 6th day of December, 2005 to:

Keith P. Barry
U.S. Probation Officer
U.S. Probation Office
915 Lafayette Blvd.
Bridgeport, CT 06604

Richard S. Cramer, Esq.
449 Silas Deane Highway
Wethersfield, CT 06109

_____
Geoffrey M. Stone