UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| VS. | : | NO. 3:03CR81 CFD |
| ALEJANDRO BATISTA | : | DECEMBER 8, 2005 |

**DEFENDANT'S SENTENCING MEMORANDUM IN SUPPORT
OF DOWNWARD DEPARTURE OR, ALTERNATIVELY,
FOR A NON-GUIDELINE SENTENCE**

I.   **BACKGROUND**

The defendant, Alejandro Batista, pled guilty on March 25, 2003, to a one count Information charging him with Possession with Intent to Distribute Five Grams or More of a Mixture and Substance Containing a Detectable Amount of Cocaine Base, in violation of Title 21 U. S. Code §841(a)(1) and §841(b)(1)(B).  The penalty for the violation of the one count Information to which the defendant has pled is a maximum term of imprisonment of 40 years with a 5 year mandatory minimum sentence and 4 years to life of Supervised Release.  The defendant is withdrawing his objections to the guideline calculation set forth in the pre-sentence report.  Thus, the defendant does not take issue with the guideline calculation of Criminal History Category III and Base Offense Level 33.  This produces a guideline range of 168 months to 210 months.  Thus, the low end of the defendant's guideline range is 14 years.  For a

1

variety of reasons, this defendant requests that this court depart below this range and impose a sentence much nearer to the mandatory minimum of five years. Alternatively, it is requested that this court, having considered the advisory nature of the guidelines, utilize the factors set forth in Title 18 U. S. Code §3553(a) and impose a sentence comparable to that sought by the departure.

## II. DISCUSSION

The United States Sentencing Guidelines operate in the context of §3553 of Title 18 of the United States Code. Section 3553(a) provides that the court "shall impose a sentence sufficient, but not greater than necessary...

 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

 (B) to afford adequate deterrence to criminal conduct;

 ©) to protect the public from further crimes of the defendant; and

 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. §3553(a).

The sentencing court "has an independent power and responsibility to impose the proper sentence" under this statutory scheme. See United States v. Pena, 930 F2d 1486, 1495-96 (10th Cir. 1991); United States v. Agu, 763 F.Supp. 703, 704

(E.D.N.Y. 1991); United States v. Swapp, 719 F.Supp. 1015, 1025 (D. Utah 1989). Indeed, because "[t]he prosecutor has tremendous discretion to decide whom to indict and what crimes to indict...[t]he essence of our system of separated powers is that the judiciary have some discretion to counterbalance the prosecutor's awesome power". United States v. Jackson, 756 F.Supp. 23, 27 (D.D.C. 1991).

In the framework of 18 .S.C. §3553, the sentencing guidelines set forth a non-exhaustive list of factors that can constitute a basis for departure. United States v. Rogers, 972 F2d 489, 492 (2nd Cir. 1992); U.S.S.G. §5K2. Because the sentencing guidelines were not intended to encompass every possible sentencing scenario, the guidelines permit downward departures both for factors enumerated in the sentencing guidelines and for mitigating factors that are not specifically addressed in the sentencing guidelines but that are present in a particular case. Rogers, 972 F2d at 492-93; United States v. Jagmohan, 909 F2d 61, 65 (2nd Cir. 1990); U.S.S.G. ch. 1, pt. A(4)(b).

The district court is afforded substantial discretion in determining whether a factor is appropriate for a downward departure. United States v. Galante, 111 F3d, 1029, 1035-36 (2nd Cir. 1997); United States v. Rioux, 97 F3d 648, 663 (2nd Cir. 1996); United States v. Broderson, 67 F3d, 452, 459 (2nd Cir. 1995). A downward departure is appropriate if a mitigating factor "of a kind, or to a degree, not adequately taken into

3

consideration" in the guidelines exists in the case, i.e., the case is out of the "heartland" of other cases to which the guidelines apply. U.S.S.G. §5K2.0 (policy statement and commentary); Koon v. United States, 518 U.S. 81.98 (1996); Broderson, 67 F3d at 458. Mitigating factors can serve as the basis for departure either individually or collectively. See Rioux, 97 F3d at 663.

### III. DEPARTURES

#### A. The defendant seeks a departure under §5K2.13 (Diminished Capacity).

The Guidelines, §5K2.13. states that "a sentence below the applicable guideline range may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity[1]. Thus, courts have applied this basis for a downward departure where a defendant was suffering from a bipolar type II disorder", United States v. Silleg. 311 F3d 557 (2d Cir. 2002); and from severe mental illness including paranoid delusions. United States v. Philibert, 947 F2d 1467 (11th Cir. 1991). Also, the courts have downwardly departed under §5K2.13 where the defendant's mental disease impaired his ability to cope with stress, "which led him to act out in a self-destructive fashion". United States v. Glick, 946 F2d 335 (4th Cir.

---

[1]This guideline was amended by the Sentencing Commission on April 30, 2003, to include a causation requirement (See Appendix C, Amendment 651). The new guideline enacted subsequent to Batista's commission of his offense now requires that the "significantly reduced mental capacity contribute[d] substantially to the commission of the offense". The Court should apply the guidelines in effect at the time of the offense and disregard the language concerning "substantial contribution" to the offense.

4

1991).  Also, the departure downward has been granted where defendants suffer from Post-traumatic Stress Disorder.  United States v. Risse, 83 F3d 212 (8th Cir. 1996) and United States v. Cantu, 12 F3d 1506 (9th Cir. 1993) (holding that "reduced mental capacity" comprehends both organic dysfunction and behavioral disturbances that appear to formation of reason judgments).  Where a defendant suffered from depression and a thinking disorder which potentially impaired her power of reasoning, one court found the departure was appropriate.  United States v. Cockett, 330 F3d 706 (6th Cir. 2003).  The court cannot refuse to depart simply because of its dislike of the diminished capacity guideline.  United States v. Ventrilla, 233 F3d 166 (2d Cir. 2000).  As long as the defendant's diminished capacity was a contributing factor to the commission of the offense, a departure is warranted.  The diminished capacity need not be the "sole cause" of his offense, and the diminished capacity must occur at the time of the offense, not sometime later.  United States v. Ruklick, 919 F2d 95 (8th Cir. 1990); United States v. Cantu, supra.  The fact the defendant intended to commit the crime, in this particular case distribution of crack, does not disqualify him from the downward departure.  United States v. Zedner, 401 F3d 36 (2d Cir. 2005).

 The defendant was examined by Dr. Madelon Baranoski in May 2003 and a copy of her report has been provided to the court through probation.  It should be noted that Dr. Baranoski was not an individual who was retained by the defense but

5

apparently through the office of probation. Her objectivity on this matter should, therefore, be unquestioned. Dr. Baranoski finds that Mr. Batista "shows an indication of an underlying thought disorder that suggests at times his thinking becomes disorganized and interferes with his ability to focus on a problem solving approach and follow through". Id at p. 4. She indicates that her testing shows evidence of "depression". She further notes that he has "significant difficulty dealing with strong emotions", that he has "difficulty with reality testing", and "at these times he is likely to become increasingly paranoid". Id at 4. She further informs the court that the current evaluation "suggests a psychotic illness which requires further evaluation and treatment". Id at 5. Mr. Batista "has a significant mental illness. Despite his lack of diagnosis and treatment in the past, he has difficulty reaching independence as an adult and his violent and paranoid fantasies indicate he is struggling to stay organized. He has significant psychological turmoil and distress and, as he described, feels as though he could lose control". Id. "Overall, the personality testing was consistent with a psychotic disorder with paranoid features and depression." Id.

Thus, it should be clear from this report that there was a causal connection between this mental illness and Mr. Batista's resorting to drug sales. He has attempted to enhance his position in life and his paranoia comes through throughout statements made to the police at the time of his arrest and in the pre-sentence report.

6

As stated previously, the court could still find that his involvement with drug distribution was motivated at least partly by monetary gain. Without excluding the downward departure sought under the pre-amended guidelines, the psychological condition only has to have a causal affect and not be the sole or primary reason for the commission of the offense.

> **B.    The court should downwardly depart under §5H1.3 because of the defendant's mental and emotional conditions.**

§5H1.3 holds that defendant's "mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range". Thus, extraordinary mental or emotional conditions can justify a departure in some instances. Some courts have held that in extraordinary circumstances, a court may depart downward where extreme childhood abuse caused mental and emotional conditions that contributed to the defendant's commission of the offense. United States v. Walter, 256 F3d 891 (9th Cir. 2001)(Holding that the district court should have considered departing under 5H1.3 because the facts of this case appeared to be "the type of extraordinary circumstances that may justify consideration of the psychological effects of the childhood abuse".) On facts not as extreme as that in Walter, id, or as that in the case now before this court, the Second Circuit has upheld the refusal of a trial court to downwardly depart under situations of childhood corporal punishment. cf. United States v. Rivera, 192 F3d 81 (2d Cir. 1989). The

7

Ninth Circuit has affirmed a downward departure where, as a youth, the defendant was often beaten, routinely raped, and sodomized, and the mother's boyfriend urinated in her mouth.  <u>United States v. Roe</u>, 976 F2d 1216 (9th Cir. 1992).  <u>See also</u>, <u>United States v. Christensen</u>, 18 F3d 822 (9th Cir. 1994)(stating that <u>Roe</u> permits a downward departure if the court concludes that defendant's mental illness qualifies as an extraordinary case).

   The pre-sentence report amply demonstrates the extraordinary and highly unusual childhood to which Mr. Batista was subjected.  The pre-sentence report, Part C.  Mr. Batista basically was raised without a father who abandoned him at an early age.  He has had almost no contact with his mother since 1997 who also appears to have abandoned him.  His upbringing was "very abusive", id, and as a young child he was left alone with his siblings for weeks at a time.  More importantly, he was constantly beaten by his mother with "an electric extension cord".  He was tied to a crib and then to a radiator for long periods of time as a child and simply locked in his bedroom so his mother could leave for long periods of time.  PSR at ¶35.  His step-father tried to choke him when he was a young child, and he was sexually abused by a male relative.  Baranoski report at 2.  Thus, the defendant's long history of abuse arising from childhood shows that this is not an "ordinary" situation.

### C. The United States Supreme Court in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005) Held That the Guidelines are Merely Advisory and the Court is not Bound to Sentence Within the Guideline Range.

Effectively, this means that the Court can sentence Mr. Batista anywhere between five and forty years. This decision appears to hold that the Court should consult the Guidelines but should primarily look at Title 18 U. S. Code §3553(a) in deciding what sentence to impose. See also, <u>United States v. Ranum</u>, CR04-cr-31 (E.D. Wis. 2005). (Attached). <u>Booker</u> requires the judge to first consider the guidelines and then determine whether a non-guideline sentence is applicable and should be utilized based upon the considerations of §3553(a). Setting aside the Guidelines for the moment, there are substantial reasons why the Court should sentence Mr. Batista lower than the Guideline range.

According to the decision of the U. S. Supreme Court in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), the Court is no longer bound by the Guidelines but must "consult them" and "take them into account when sentencing". Id at 767. The Court should first determine whether it wishes to apply a Guideline sentence. Such a requirement is no longer mandatory. If the Court does not wish to apply a Guideline sentence, it should consult the Guidelines but also apply the other factors listed in 18 U. S. Code §3553(a). Id. <u>United States v. Crosby</u>, 397 F3d 103 (2d Cir. 2005).

With the advent of the <u>Booker</u> and <u>Crosby</u> decisions, the court must give far

less deference to the guidelines than was previously done. The guidelines are now nothing more than just one of the factors enumerated in Title 18 U. S. Code §3553(a). United States v. Jaber, 362 F. Supp. 2d 365 (D. Mass. 2005). Unlike the days in which only a departure could enable a defendant to receive a below guidelines sentence, nothing nearly as "extraordinary" is now needed to achieve that result. United States v. Jaber, id. Furthermore, this court can even take into consideration factors which were previously discouraged or even prohibited by the guidelines in determining whether §3553(a) factors justify a below guideline sentence. Id at , n.19.

Certain factors in the pre-sentence report seem to suggest that the guideline sentence, calling for a minimum of 14 years, is not reasonable. For example, Mr. Batista, is a man in his late twenties with one prior conviction. This one conviction, however, has generated six criminal history points. Other individuals charged with the same offense may have had two or three separate, totally distinct incidents of criminal activity and received no more criminal history points than did Mr. Batista.

Furthermore, as stated, at least one court has held that discouraged factors and even prohibited factors may play into the terminology of §3553(a) where they would not be sufficiently "extraordinary" to justify downward departures. Should the court, for example, not find there is a causal connection between Mr. Batista's abusive youth or his psychotic and paranoid mental condition in the offense, the court can

utilize those factors in justifying a sentence below and outside the guideline range. §3553(a)(2)(D). Dr. Baranoski, for example, tells the court in her letter that Mr. Batista would "benefit from treatment and his symptoms are such that medication and therapy can have a significant impact". Baranoski letter p. 6. Baranoski also says that Mr. Batista "could benefit from formal education and academic training". While this court cannot place Mr. Batista on probation, a significantly reduced sentence from the guideline range would appear to be the best approach to give him the "needed educational or vocational training [and medical care]. 18 U. S. Code §3553(a)(2)(D).

Furthermore, defendant's Base Offense Level is enhanced by four points (two for role in the offense and two for the weapon). The record does not show, however, that the individual who worked under him was doing so for any protracted period of time and did more than occasionally bag some drugs and sell them at a designated location. Similarly, there is no indication that Mr. Batista ever utilized the weapon in a threatening or violent way, but simply may have had one for protection. The guidelines do not account for these minimal intrusions into enhancement categories and yet these four additional points account for years of additional incarceration.

## IV.    CONCLUSION

It is respectfully submitted this court depart below the guideline range and sentence Mr. Batista to a term of confinement close to the mandatory minimum. Or

alternatively, a similar non-guideline sentence.

                                Respectfully submitted,

                                DEFENDANT, ALEJANDRO BATISTA


                                By:_____
                                    Richard S. Cramer
                                    449 Silas Deane Highway
                                    Wethersfield, CT 06109
                                    Tel. 860/257-3500
                                    Federal Bar No. ct00016
                                    Email: cramer@snet.net

## **CERTIFICATION**

      THIS IS TO CERTIFY that a copy of the foregoing was mailed and faxed this 8th day of December 2005 to:

Christopher Schmeisser
Assistant U. S. Attorney
P.O. Box 1824
New Haven, CT 06508
Fax (203) 773-5376


                                _____
                                  Richard S. Cramer